ROSENBLOOM FINANCE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 35778, 40903. Promulgated November 12, 1931.

764

*W. W. Spalding, Esq.*, for the petitioner.

*J. D. Foley, Esq.*, and *James C. Maddox, Esq.*, for the respondent.

*John C. Altman,* as *amicus curiae.*

766

768

## OPINION.

BLACK: The two questions involved in this proceeding are questions of law. There is no dispute about the facts. These law questions are: (a) What is the proper basis to be used in determining the gain derived, if any, in each of the taxable years, from the sale of assets represented by warehouse receipts transferred to petitioner company by its majority stockholder without the payment therefor

of any stock, money, or other property, and set up on petitioner's books in accordance with the agreement of transfer, as paid in surplus? (b) Did the distribution of assets made to petitioner in 1924 by Joseph S. Finch & Company (a corporation of which it owned all the capital stock) constitute a liquidating dividend and thereby become, under the Revenue Act of 1924, payment in exchange for the stock of said corporation and a taxable transaction?

We will first discuss (a). The basis for determining the gain, if any, of the sale by petitioner of the barrels of whiskey covered by the warehouse receipts is provided in sections 204 of the Revenue Acts of 1924 and 1926, which are identical and the part of the section which it is necessary for us to construe is stated in footnote.[1]

Congress made no attempt to define the word " gift " as used in section 204 (a) (2), and therefore we must construe it in accordance with its usual and ordinary meaning. Webster's New International Dictionary defines the word " gift " to mean: " anything given, anything voluntarily transferred by one person to another without consideration. A present." Can it be said that the transactions with reference to these warehouse receipts for whiskey set out in our findings of fact evidence a present of the whiskey from Rosenbloom to the corporation? We do not thus construe the transactions. A condition of the transfer as outlined by Rosenbloom in his letter to the corporation was: " The warehouse receipts and the notes and cash shall constitute paid-in surplus of the corporation." And the corporation in accepting said transfer, among other things, resolved: " That such properties shall be and the same are hereby declared to be paid-in surplus of this corporation. And be it further resolved that the secretary-treasurer of this corporation is hereby directed to make appropriate entries on its books to effectuate this resolution."

We do not think it can be said that a stockholder of a corporation who makes a payment to the paid-in surplus of a corporation is making a gift to the corporation. In such a transaction the relation of donor and donee does not exist. If all the stockholders of petitioner had made a ratable contribution to paid-in surplus, we do not believe it would be contended that their payments for that purpose

---

[1] Sec. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(2) If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine such basis are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis shall be the fair market value of such property as found by the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner.

amounted to gifts. Does the fact that Rosenbloom alone made this transfer of property under an agreement with the corporation that it would be treated as paid-in surplus change the character of the transaction from what it would otherwise be if all stockholders had made ratable contributions? We do not think so.

It is true that where a majority stockholder in a corporation makes a payment to the paid-in surplus of the corporation under circumstances such as we have in the instant case, he only benefits in part from the increased surplus and other stockholders who make no ratable payments benefit in proportion to their stock, the same as he does, but that does not materially change the character of the transaction. The fact remains that the majority stockholder does benefit from it. By reason of his ownership of stock in the corporation, the value of his stock is increased and the earnings on his stock will presumably be increased by reason of the enlarged surplus of the corporation. It is these benefits, direct and indirect, which flow to the stockholder who makes such a transfer of property, which we think takes the transaction out of the gift classification.

Twenty-eight Corpus Juris, p. 620, defines the meaning of the word " gift " as follows:

A gift has been defined as a voluntary transfer of property by one to another, without any consideration or compensation therefor. The term is also used to designate that which is given; anything given which is voluntarily transferred by one person to another without compensation. A gift is a gratuity, and not only does not require a consideration, but there can be none; if there is a consideration for the transaction it is not a gift. A gift is dependent upon no agreement, but upon the voluntary act of the donor only.

What each party agreed to do in respect to these transactions is set out in detail in our findings of fact, and we hold that such facts do not evidence a gift within the meaning of section 204 (a) (2) of the Revenue Acts of 1924 and 1926, and hence we hold that respondent erred in determining the gain realized by the corporation in the sale of those assets, by using as a basis of cost to the corporation, the basis of cost of such assets to Sol Rosenbloom. Since we have held that section 204 (a) (2) is not applicable to the transactions now under discussion, we must determine the basis of cost without reference to that particular part of the statute.

We hold that the proper basis for computing the gain or loss on the sale of the whiskey represented by these warehouse receipts is the fair market value of such property at the time it was acquired by petitioner. Cf. *Francis Francis, Guardian*, 15 B. T. A. 1332; *Banker's Trust Co.*, 24 B. T. A. 10.

We come now to question (b). We must be guided in the decision of this question by section 201 of the Revenue Act of 1924.

Respondent concedes, as indeed he must, that there was no complete liquidation of the Finch Company. It is still in existence, is active in business, with the same number of outstanding shares of stock as at the time of its organization.

Respondent contends, however, that there was a partial liquidation of Finch & Company when in 1924 it transferred to petitioner assets of the net value of $531,804.93. Respondent contends that this was not only a distribution of all the earned surplus of the corporation, but $50,478.70 of the capital of the corporation, and therefore this makes the distribution a partial liquidation of the corporation within the meaning of the taxing act. Respondent cites in support of his contention *Hellmich* v. *Hellman*, 276 U. S. 233, and *E. G. Perry*, 9 B. T. A. 796. We think these cases would be in point to support respondent's contention if the language of the Revenue Act of 1924 were the same as the revenue act which was under consideration in the two cases above cited, to wit, the Revenue Act of 1918, but the language is not the same. There is a section 201 (g) of the Revenue Act of 1924 which is not found in the Revenue Act of 1918. It reads:

(g) As used in this section the term "amounts distributed in partial liquidation" means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

It seems clear that in the present case there was no cancellation or redemption of any part of the Finch Company's stock; there was no series of distributions in complete or partial cancellation or redemption of all or a portion of the stock.

Only by disregarding the plain language of the definition contained in section 201 (g) could we reach the conclusion that there was a distribution in partial liquidation of the Finch Company in 1924. We said in *W. E. Guild*, 19 B. T. A. 1186:

Liquidation is not a technical status which can be assumed or discarded at will by a corporation by the adoption of a resolution by its stockholders, but an existing condition brought about by affirmative action, the normal and necessary result of which is the winding up of the corporate business.

Adhering to the words of the statute contained in section 201 (g) of the Revenue Act of 1924, we hold that the distribution of assets to petitioner by the Finch Company in 1924 was not a distribution in partial liquidation of the Finch Company within the meaning of the statute.

Accordingly, respondent's motion to increase the deficiency as asked for in his amended answer, is denied.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MARQUETTE and STERNHAGEN dissent.